CaRuthebs, J.,
delivered the opinion of the court.
The bill in this case, was filed by the complainant as executor of Francis Pride, against the defendants, *197 as legatees in his will, for instructions in the execution of his trust. The slaves named in the will an-swer by their next friend, and claim their freedom, which presents the only important question in the case. The Chancellor decreed that they were entitled to emancipation tinder the will, from which an appeal was taken to this court.
- The case must turn entirely upon the question whether the act of 181-2, ch. 191, is so far repealed by the act of 1849, ch. 109, as to disallow slaves thereafter emancipated, to remain in this State, and restores in all its rigor, the act of 1831, ch. 102. To this question the argument is mainly confined, and we think correctly. The same point was brought before us at the last term at Knoxville, as one of the questions in a case there decided, and.. our opinion was in favor of the implied repeal. But, as we regard it an important question, we have attentively heard it reai’gued in this case and reviewed the grounds of that decision. But the conclusion to which we arrive is still the same.
The last act can have no other object but to su-percede the provisions made in the act of 1842, for emancipated slaves to continue in the State, and to fall back upon the policy of the act of 1831. It is entirely a question of policy, of which the Legislature, at distinct periods, have taken different views. It is a vexed and perplexing question, upon which public, opinion, acting upon the representatives of the people, has been subject to much vibration between sympathy and humanity for the slave, and the safety and well being of society. Hence, the frequent changes in our legislation on the subject.
*198 In 1831 it was thought that the best interest of the community required that the number of free negroes should not be increased either by new acts of manumission or emigration, and the act of 1831, ch. 102, was passed. By the second section, as a condition precedent to the consent of the State, a bond with security was required to be given in a sum equal to the value of the slave, by the person proposing to manumit, that the negro to be freed shall leave the State forthwith. The first section made it a felony, punishable by fine and also confinement in the penitentiary, for any free negro to come into this State and remain twenty days. By the act of 1833, ch. 81, slaves who had contracted for their freedom before the passage of the act of 1831, or in cases where the owner had died before that time, and bequeathed to them their freedom, were exempted from the provisions of said act, and were allowed to be set free according to the preexisting laws. The act of 1842, ch. 191, § 1, enacts “that when any slave has been or shall be emancipated in this State, agreeably to the laws now in force, and where any free persons of color shall have removed to this State previous to the 1st of January, 1836, it shall be lawful for such free person of color to prefer his petition to the county court of the county in which he or she is residing, or may wish to reside, setting forth the causes, &c.; and such court, upon being satisfied of good character, &c., may grant permission to remain &c. Bonds to keep the peace, and be of good beha-viour, to be renewed every three years, to be given. This is in substance, a repeal of the act of 1831, as to negroes of good character in the opinion of any *199 county court, or sucb. as were in the State before 1836, or natives of tbe State. To be sure the bond to leave the State was still to be given, but at the same time it could be annulled by an order of the* court made upon petition, &c., to remain in the State.
This policy continued until the 30th December, 1849, when the Legislature enacted, ch. 107, “that the act of 1842, ch. 191, be so amended that hereafter no slave shall be emancipated in this State except upon the terms and conditions imposed by the act of 1831, ch. 102.”
This act it is believed, has been regarded by the courts and profession, ever since its passage, as -a repeal of that part of the act of 1842, which provides for slaves thereafter to be set free, to remain in the State, and we believe that such was the intention of the law makers. It is difficult to see what other effect can be given to it. The phraseology is not the best that might have been selected, but the meaning is sufficiently explicit.
The will under consideration provides that all his slaves be hired out until a fund is produced sufficient to pay all debts and expenses to be incurred in setting them free and removing them to Illinois, if they should be taken there, with one year’s support.
“Article 3. I will, or give, all the above named slaves their freedom, if they can be emancipated according to the laws of Tennessee and remain in Tennessee as free persons of color, or when emancipated here if they can be removed to the State of Illinois and live there and be protected as free persons of color by the constitution and laws of that State. Article 4. I direct if my said slaves cannot be emancipated and remain in *200 Tennessee, or be removed to Illinois, and remain there as free persons, that they be sold, except,” &c.
These last, being eleven in number, are to be kept and taken care of by the executor, or such person for him as will treat them kindly, &c., but to have their freedom at as early a time as practicable.
By the sixth article, the proceeds of those which are to be sold on the condition aforesaid, being twenty-eight or thirty in number, are to be distributed between certain nephews and nieces.
Here there is a bequest of freedom upon the express conditions that after manumission the negroes'can legally remain in Tennessee or Illinois: We have seen that they cannot be allowed to remain in this State. By an act of the Legislature of Illinois, approved February 12th, 1843, they are prohibited under heavy penalties, from emigrating to or settling in that State. Which act is legally certified and copied into this record.
The condition then, upon which freedom was given having failed, the said slaves must be sold and remain in bondage, and this by the express provisions of the will.
Tins is not a case where there is a general predominating intent to emancipate, and the mode and means are secondary; but the intent is made to depend entirely upon the annexed condition that they can lawfully remain in Tennessee or be removed to Illinois, and allowed to live there under the protection of their laws.
They must therefore be sold, and the proceeds paid out as directed by the will. Those reserved from sale will be kept by the executor, as directed, until they can be set free by a compliance with the law, and this it is *201 tbe duty of tbe executor to do as soon as practicable, and tbe case sliall remain in'tbe court below for further orders and directions on this subject. We do not now determine what will be their condition if their manumission should not be effected~in a reasonable time, but only that it is tire duty of the executor to effect it if practicable under our laws.
A decree will be drawn up in pursuance of- this • opinion, and the cause remanded for the execution of the same. All the costs here and below will be paid by the executor out of the funds in his hands.